25-mj-7212-JCB

## AFFIDAVIT OF FBI TASK FORCE OFFICER JOHN OLIVEIRA

I, John Oliveira, depose and state as follows:

### INTRODUCTION

1.     I am a Police Officer with the Somerville Police Department and have been so employed since 1997.   In 2000, I was assigned to the Detective Bureau of the Somerville Police Department.   In June 2008, I was assigned to the FBI Boston Division's Violent Crimes Task Force ("VCTF"), which comprises law enforcement officers from the FBI, Massachusetts State Police ("MSP"), and other local police departments. I have been sworn in as a Special Deputy U.S. Marshal.

2.     I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.   As a Task Force Officer with the VCTF, I have regularly responded to incidents involving violent encounters. I have also received specialized training regarding investigative techniques, evidence collection, and evidence preservation. My responsibilities include the investigation of possible violations of federal law, including investigation of violent crimes like kidnappings, armed robberies, bank robberies, murders, and threats/extortion.   In the course of my career, my investigations have included the use of various surveillance techniques and the execution of various search, seizure, and arrest warrants.

1

3.    Based on my training and experience, I am familiar with federal firearm and violent crime laws.   I know that it is a violation of 18 U.S.C. § 1201(c) to conspire to kidnap a victim in the United States.

4.    As set forth below, there is probable cause to believe that Brian CARDOSO ("CARDOSO") violated 18 U.S.C. § 1201(c) on or about February 27 and 28, 2025 by conspiring with other individuals to kidnap a victim in Quincy, MA.   The information contained in this affidavit is based on my own investigation, written/oral reports by other law enforcement officers and database checks.   The dates and times in this affidavit are approximate.   Because this affidavit is submitted for the limited purpose of supporting issuance of a federal complaint for CARDOSO, I have not presented every fact learned during the investigation, but only that information necessary to fully support probable cause for the issuance of a federal complaint for CARDOSO.

## CARDOSO's BACKGROUND

5.    I am aware that CARDOSO is presently on federal supervised release for a 2021 conviction in this District for being a Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1).   For this federal conviction, Defendant received a sentence of 40 months' incarceration to be followed by 3 years of supervised release.

6.    Based on communications with other law enforcement officers, I am aware that CARDOSO has been identified as a member/associate of the NOB street gang.   The NOB gang is a violent criminal organization/street gang, which is based in Dorchester, MA.   "NOB" references Norton/Olney/Barry streets in Dorchester.   NOB is associated with the Wendover gang, another violent criminal organization/street gang based in Dorchester, MA.    I am aware,

2

based on communications with other law enforcement officers, that NOB engages in various types of criminal activities including: (1) crimes related to murder (usually involving shootings); (2) drug trafficking; (3) sex trafficking; (4) robberies; (5) other violent crimes (such as batteries both on the street and in custodial settings); (6) witness intimidation and obstruction of justice; and (7) firearms-related crimes.   In 2019-2020, numerous members/associates of NOB, including CARDOSO, were prosecuted for federal crimes, including RICO conspiracy, based on an investigation of the gang.   Pursuant to the RICO investigation, investigators identified several crimes in which NOB members/associates worked together, including violent crimes.

## **PROBABLE CAUSE FOR THE COMPLAINT**

### I.    **The Kidnapping Generally**

7.    There is probable cause to believe that on or about the evening of February 27, 2025, and continuing into the early morning of February 28, 2025, the victim ("John Doe")[1]  was kidnapped, battered and robbed by several individuals.   Based on the ongoing investigation, the victim was abducted at approximately 9:00 p.m. outside his residence in Quincy, MA, and was released by his kidnappers in Quincy at approximately 3:37 a.m.   At approximately 5:30 a.m. on February 28th, the victim alerted police in Quincy about the incident.   Officers from the Quincy Police Department ("QPD") interviewed the victim, who spoke Cantonese – a QPD officer with Cantonese language abilities aided in the interview, and an investigator with Cantonese language abilities has also aided in subsequent interviews.[2]

---

[1]  I am aware of the victim's identity, his name, as well as other biographical and related information. I am not including these specifics for the purpose of this affidavit.

[2]  Following the initial report of the kidnapping, the victim has submitted to several additional

8.    In substance, the victim told investigators that he had been abducted and physically restrained by multiple individuals as the victim left his residence in Quincy at approximately 9 p.m. on February 27, 2025.   The victim was abducted as he was walking towards his vehicle, which was a grey/silver Toyota Tundra.   The kidnappers wore dark clothing and masks concealing their faces.   At least two of the kidnappers were armed with firearms.   The victim identified that one of the guns used in the kidnapping had a laser attached to it – as noted below, a similar handgun was recovered from Defendant's vehicle on March 3, 2025.   The kidnappers forced the victim at gunpoint into the victim's own vehicle and blindfolded the victim.

9.    Per the victim, he was driven in his vehicle (the Tundra) to a garage located at 240 Lincoln Avenue in Saugus, MA.   The victim also informed investigators that he believed a Chevy sedan was involved in the kidnapping and drove to the garage.   The victim had previous experience with this garage and the victim brought investigators to the garage following the kidnapping.   While in the garage, the victim was physically abused by his kidnappers in various ways, including being physically assaulted and burned with a lighter.[3]   Investigators observed injuries on the victim's person consistent with his being beaten and burned with a lighter.

---

interviews, with QPD detectives as well as investigators with the FBI VCTF.   While the victim has changed minor details of his story a few times, he has also provided additional details about his kidnapping, that the QPD and FBI VCTF have corroborated through investigative methods in this case.   He has also been consistent that the kidnapping occurred, and that he was brought to a garage in Saugus during the kidnapping.

[3] A search warrant was executed at the Saugus garage on or about March 3, 2025.   Investigators found a red/brown stain, pair of black and white sneakers, two cigarettes, two water bottles, an apparent vaporizer, a condom wrapper, and a blue charger.

## II.    <u>Phone Evidence Links CARDOSO to the Kidnapping Conspiracy</u>

10.    Investigators have recovered a cellular phone from one of CARDOSO's associates (who is also associated with the NOB street gang) on or about March 3, 2025.   The seized phone was subsequently searched pursuant to a federal search warrant issued by this Court.   On the phone, investigators found several pieces of electronic evidence tying the phone to the kidnapping and CARDOSO to the kidnapping conspiracy.

11.    For example, the phone contained a video recording which captures various motorbikes.   Based on communications with the Saugus garage owner, I am aware that the motorbikes in the video recording were in the Saugus garage at the time of the kidnapping. In fact, as discussed below, the same motorbikes were reported stolen from the garage approximately three days after the kidnapping.   In the background audio of the recording, an individual is being questioned, consistent with the victim being questioned during the kidnapping.   Thus, this video recording appears to have been made at the time of the kidnapping in the garage where the kidnapping victim was being held, questioned, and physically accosted.

12.    In addition to the kidnapping video, the phone had various WAZE (a satellite navigation app) searches for directions to locations associated with the kidnapping at times consistent with kidnapping.   For example, at approximately 9:16 p.m., there was a WAZE search for directions to a restaurant that is next to the Saugus garage used to hold the victim during the kidnapping.   Similarly, at approximately 11:40 p.m., there was a WAZE search for directions to a residence of an individual tied to the kidnapping (hereinafter referred to as "Individual #1).   Finally, at approximately 2:58 a.m. on September 28th, there was a WAZE search for directions to a Malden restaurant where ransom for the victim's release had been

dropped off as described below in Paragraph 15.   Thus, there is probable cause to believe this phone was used to facilitate the kidnapping of the victim.

13.    The same phone also contains evidence of electronic communications consistent with communications facilitating the kidnapping and surrounding events; these communications involve CARDOSO.   These communications include group chat sessions of a group consisting of eight telephone numbers.   The group chat involved the phone numbers for at least four individuals whom investigators have tied to the kidnapping, including: (1) the owner of the phone (an NOB associate of CARDOSO); (2) CARDOSO; (3) Individual #1, who was recorded on site at the Saugus garage at the time of the kidnapping as well as operating a car associated with the kidnapping[4]; and (4) a male hereinafter referred to as "Individual #2" – a vehicle associated with Individual #2 has been identified as being used to pick-up ransom money from the victim's residence in Quincy as discussed below in Paragraph 16.   This group chat had at least 8 communication sessions in the day and hours leading up to the kidnapping.   The last of these sessions prior to the time of the kidnapping lasted approximately 28 minutes and took place at approximately 8:26 p.m. – the kidnapping took place at approximately 9 p.m.   Thus, this communication session led up to the approximate time of the kidnapping.   The group chat subsequently had multiple additional call sessions occurring around the time of the kidnapping between approximately 9 p.m. and 9:35 p.m.   This pattern of communications (involving four individuals, including CARDOSO, tied to the kidnapping) is consistent with the members of the group working together to facilitate the kidnapping.

### III.    A Vehicle Used by CARDOSO was at the Scene of the Kidnapping

---

[4] As discussed below, the car operated by Individual #1 belonged to CARDOSO.

14.    Investigators obtained security video from the area near the Saugus garage and were able to identify the victim being brought into the garage by individuals in dark clothing with masks during the time of the kidnapping.   The victim was removed from what appeared to be a Tundra – consistent with the victim's statements to investigators.   The security video also recorded certain vehicles in the area of the kidnapping.   The security video further showed various individuals wearing dark clothes and masks acting in a manner consistent with being involved in the kidnapping.   A number of these individuals were using mobile phones during the kidnapping.

15.    The kidnappers demanded and obtained ransom, first, through an acquaintance of the victim, and, second, through the victim's wife.   Investigators have identified an acquaintance[5] of the victim who was contacted on the victim's phone via the app "WeChat"[6] by the kidnappers during the kidnapping.   The acquaintance informed investigators that he/she observed the victim being physically assaulted inside of a building.   The acquaintance did not see the kidnappers' faces but did observe that there were multiple kidnappers.   The kidnappers asked for $150,000 in cash or they would kill the victim.   The victim instructed his acquaintance to get a Rolex watch from the victim's apartment and to get money for the ransom.   The

---

[5] I am aware of the victim's acquaintance's identity, his name, as well as other biographical and related information. I am not including these specifics for the purpose of this affidavit.

[6] WeChat is a Chinese instant messaging, social media, and mobile payment app.   According to WeChat's privacy policy, updated December 16, 2024, the content of communications between users "passes through" WeChat's servers.   WeChat's servers retain chat messages and other media, including images, audio, videos, and files, at least momentarily before being permanently deleted.   According to WeChat, its servers are located in Ontario, Canada, and Hong Kong.

acquaintance got the Rolex and an amount of cash to pay the ransom demanded by the kidnappers.   The acquaintance subsequently left the Rolex and the money at a restaurant in Malden, MA, because the acquaintance was concerned about meeting the kidnappers.   The acquaintance sent the kidnappers a video of the location in Malden where the money and watch could be located.   The kidnappers responded that if the money and watch were not at the location, or if the individual went to the authorities, they would kill the victim.

16.    Based on the investigation, investigators have identified that—after the kidnappers demanded and obtained ransom from the victim's acquaintance—at approximately 3 to 3:30 a.m. on February 28, the victim's wife,[7] at the instruction of the kidnappers, threw money off a balcony of their Quincy residence as part of the ransom for the kidnappers.   The victim was released by the kidnappers at approximately 3:37 a.m. on February 28, 2025, in the area of 690 Adams Street, Quincy.   In addition to the ransom payments, the victim was robbed of property on his person, including an amount of money, his credit cards and his bank cards which he was carrying at the time he was abducted.   The victim informed investigators that he had been forced to provide the kidnappers with the pin numbers for his bank cards.

17.    Security video footage of the night of the kidnapping, which covers the area by the door of the Saugus garage, shows a man, Individual #1 (discussed above).   Investigators know the identity of Individual #1 as well as his phone number (as noted above, Individual #1 was part of a group chat that also included CARDOSO and appears to have been used to facilitate the kidnapping).   Between approximately 9:48 p.m. and 9:52 p.m., Individual #1 drove a black

---

[7] I am aware of the victim's wife's identity, her name, as well as other biographical and related information. I am not including these specifics for the purpose of this affidavit.

Chevrolet Malibu, bearing licensed plate MI Reg. ETE8602 (the "black Chevrolet Malibu") into the parking lot near the garage.   As previously referenced, the victim believed that a dark Chevrolet sedan had been used in the kidnapping.      Individual #1 entered the garage, and then subsequently exited the garage with his phone in hand and the screen lit up.   At around 9:56 p.m., Individual #1 repositioned the black Chevrolet Malibu near the entrance of the parking lot. He then exited the vehicle wearing a black balaclava and entered the garage.   Shortly thereafter, Individual #1 walked to the driver's side of the black Chevrolet Malibu and the black Chevrolet Malibu drove off the parking lot.

18.    Based on the investigation, including the rental agreement for the black Chevrolet Malibu and the information referenced in Paragraph 21 of this affidavit, investigators have learned that the black Chevrolet Malibu was rented by CARDOSO's mother and used by CARDOSO.

19.    Surveillance footage shows that, during the kidnapping, an individual (who was not involved in the kidnapping) observed a male in dark clothes standing near the Saugus garage where the kidnapping was taking place.   The individual has indicated that he saw the top part of the male's face and his hair.   Through news coverage of this case, the individual observed an image of CARDOSO and identified CARDOSO to be the male outside the garage during the kidnapping based on CARDOSO's hair braids.

### IV.    CARDOSO's Vehicle was Recorded Consistent to Facilitating the Kidnapping

20.    Investigators have reviewed numerous camera systems in Quincy, and outside of Quincy, to identify potential vehicles used in the kidnapping.   Investigators identified that

CARDOSO's black Chevrolet Malibu drove in patterns consistent with being used in the kidnapping, including in preparing for the kidnapping. For example, investigators have determined that, although CARDOSO lives in Dorchester, MA, CARDOSO's black Chevrolet Malibu was captured on Quincy city cameras on February 26th, at numerous times, on different cameras, within .6 miles of the victim's residence; this was the day before the kidnapping. Similarly, on February 27, 2025, the night before the kidnapping, at approximately 1:23 a.m., CARDOSO's black Chevrolet Malibu traveled on Robertson Street in Quincy, MA. The black Chevrolet Malibu then turned right onto the victim's street toward the victim's home, the scene of the future kidnapping, and returned three minutes later in the opposite direction. As another example, the night of the kidnapping, CARDOSO's black Chevrolet Malibu traveled on Lincoln Avenue in Saugus, MA (the street where the garage is located): (1) at 9:30 p.m., 8 minutes behind the Tundra (the victim's identified vehicle as discussed above); (2) at 11:39 p.m., 2 seconds behind the Tundra; (3) at 12:14 a.m., 4 seconds behind the Tundra; (4) at 3:18 a.m., 3 seconds behind the Tundra. The black Chevrolet Malibu was also recorded at 3:53 a.m. on Canton Street, near the Randolph/Canton, MA line, 6 minutes after another vehicle of interest in the kidnapping. As discussed above, CARDOSO's black Chevrolet Malibu was recorded parked outside the garage where the kidnappers had taken the victim during the kidnapping.

21.    The victim also told investigators that, at one point, the kidnappers told him that they had followed him for months. Consistent with this statement, Quincy city cameras recorded CARDOSO's black Chevrolet Malibu on multiple days in February consistent with the vehicle being used for reconnaissance and planning of the kidnapping. For example, on February 6th, CARDOSO's black Chevrolet Malibu was captured multiple times on cameras

including within .4 miles of the victim's residence.   On February 8th, CARDOSO's black

Chevrolet Malibu was captured within .5 miles of the victim's residence.   Quincy city cameras

recorded CARDOSO's black Chevrolet Malibu in the city on the following other dates in

February: the 9th, 11th, 14th, 15th, 18th, 20th, and 21st.

### V.    CARDOSO Used the Victim's Stolen Credit Cards Within 36 Hours of the Kidnapping

22.    Investigators learned that the victim's stolen credit card was used on or about

March 1, 2025, at a Snipes Sneaker Store at approximately 4:42 p.m. in Dorchester, MA –

CARDOSO lives in Dorchester.   Investigators were able to obtain security video of the

transaction involving the victim's stolen credit card.   Investigators were able to generate still

images of the individual who used the stolen credit card.   The individual was identified by a

Boston Police officer from the Youth Violence Task Force as CARDOSO – the officer had

experience with CARDOSO due to CARDOSO's involvement in NOB.   Thus, within

approximately 36 hours of the kidnapping, CARDOSO was using property stolen from the

victim during the kidnapping – consistent with CARDOSO being a conspirator in the kidnapping

and being financially rewarded for his participation.

### VI.    CARDOSO Possessed a Firearm Consistent with One of The Firearms Used in The Kidnapping

23.    On March 3, 2025, approximately three days after the kidnapping, investigators

observed CARDOSO's black Chevrolet Malibu and another vehicle of interest parked outside of

172 North Franklin Street in Holbrook, MA.   Investigators followed and stopped the black

Chevrolet Malibu in Holbrook, MA.   Inside the vehicle, investigators found a female associate of

CARDOSO in the driver's seat, CARDOSO in the front passenger seat, and a male associated with

the Wendover Street Gang and NOB in the rear passenger seat.   Investigators recognized CARDOSO as the man in the Snipes surveillance images using the victim's credit card. Investigators seized and searched the black Chevrolet Malibu.   Investigators found, among other items, (1) a loaded black Springfield Armory 9mm pistol (bearing serial GM930657) with a laser attachment located in the engine compartment; and (2) two Snipes shopping bags, each of which contained a receipt dated March 1, 2025, and a pair of new shoes in a shoe box.   The recovered Snipes evidence was consistent with CARDOSO using the victim's credit cards within 36 hours of the kidnapping.   The handgun with its laser attachment was consistent with the victim's recollection that one of the firearms used in the kidnapping had a laser on it.   Based on my training and experience, as well as communications with other officers, handguns with laser attachments are not commonly recovered from Boston gang members/associates, such as CARDOSO.   Investigators arrested CARDOSO on scene. After the stop, CARDOSO's female associate told police that the black Chevrolet Malibu (bearing MI Reg. ETE8602) belonged to CARDOSO.

### VII.    CARDOSO is Associated with a Theft that Arose Separately from the Kidnapping and Involved the Garage Used in The Kidnapping

24.    As noted above, CARDOSO's associate's phone (which was used to facilitate the kidnapping) had video images of various motorbikes which were in the Saugus garage at the time the garage was used in the kidnapping – these motorbikes were identified by the owner of the garage.   On or about March 3, 2025, the owner of the garage contacted investigators and reported that several motorbikes had been stolen.   The theft took place in the evening of March 1 into the early morning of March 2 - approximately two days after the kidnapping.   Per our investigation,

investigators located surveillance video from the area of the Saugus garage which showed a U-Haul truck parked near the garage at the time of the theft consistent with the U-Haul truck being used to facilitate the theft.

25.    On March 3, 2025, CARDOSO's female associate, who was stopped with CARDOSO, stated that CARDOSO called her that morning to ask her to drive CARDOSO and the other gang member to a U-Haul truck that was parked at a friend's house. Officers recovered U-Haul keys from CARDOSO's pocket when he was arrested that day.   As noted above, a U-Haul truck was used by individuals to steal eleven motorbikes (including eight scooters and three four-wheelers) from the Saugus garage where the kidnappers brought the victim to facilitate the kidnapping.   Investigators have learned that on March 1, 2025, the day after the kidnapping, CARDOSO rented a U-Haul 26-foot box truck consistent with the type of truck observed on surveillance video at the Saugus garage during the time frame when the motorbikes were stolen. Further, during that time frame, an individual witnessed four men in or around the U-Haul truck and the garage door open.   On or about March 9, 2025, the eight scooters that were stolen from the Saugus garage were located in the yard of 12 Harlow Street, Dorchester, MA - a residential address associated with a well-known NOB gang member/associate. Thus, these facts are consistent with CARDOSO and his associates returning the Saugus garage and stealing motorbikes that had been observed (and video recorded) during the kidnapping.

26.    Based on an ATF trace of the seized 9mm semi-automatic pistol, bearing serial number GM930657, the firearm was not manufactured in the Commonwealth of Massachusetts and was initially sold by an FFL in another state.   Therefore, the firearm traveled in interstate or foreign commerce prior to March 3, 2025.

27.    Based on the above, I believe probable cause exists that on or about February 27

into February 28, 2025, within the District of Massachusetts, Brian CARDOSO violated 18 U.S.C.

§ 1201(c) by conspiring with other individuals to kidnap the victim identified in this case.

_____
John Oliveira
FBI Task Force Officer


Sworn to before me by telephone in accordance with Fed. Rule Crim. P. 4.1 this 22nd day of April,
2025.

_____
HON. JENNIFER C. BOAL
UNITED STATES MAGISTRATE JUDGE

14